## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

JANE DOE

                                        Civil No. 21-1754 (JRT/TNL)
                    Plaintiff,

v.                              **MEMORANDUM OPINION AND ORDER**
                                **DENYING DEFENDANT KELLY**
INNOVATE FINANCIAL, INC, ET AL.,   **NAKASHIMA'S MOTION TO DISMISS**

                    Defendants.

Jason Scott Juran and Lee A. Hutton, III, **THE HUTTON FIRM, PLLC,** 333 South Seventh Street, Suite 1110, Minneapolis, MN 55402; Kyle Patrick Hahn, **THE HUTTON FIRM, PLLC,** 4039 Fifth Street Northeast, Minneapolis, MN 55421, for plaintiff;

Donald R. McNeil and Valerie Sims, **HELEY, DUNCAN & MELANDER, PLLP**, 8500 Normandale Lake Boulevard, Suite 2110, Bloomington, MN 55437, for defendants Innovate Financial, Inc. and Michael Nakashima;

Mitchel D. Greggs and Warren B. Lightfoot, **MAYNARD COOPER & GALE PC**, 1901 Sixth Avenue North, Suite 1700, Birmingham, AL 35203; Tracy J. Van Steenburgh, **NILAN JOHNSON LEWIS PA**, 250 Marquette Avenue South, Suite 800, Minneapolis, MN 55401, for defendant ProEquities;

Debra L. Weiss, **MEAGHER & GREER, PLLP**, 33 Sixth Street, Suite 4400, Minneapolis, MN 55402; Navita Lakhram, **FREDRIKSON & BYRON, PA,** 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402, for defendant Kelly Nakashima.


Plaintiff, Jane Doe, has commenced this lawsuit against Defendants Michael Nakashima ("M. Nakashima"), Kelly Nakashima ("K. Nakashima"), Innovate Financial, Inc., and ProEquities asserting a variety of claims arising out of alleged sexual misconduct and harassment in the workplace.  Doe brought claims of a Title VII violation, battery, tortious

interference, and wrongful termination against Defendant K. Nakashima.  K. Nakashima filed a motion to dismiss all claims against her along with a request that the Court require Doe to disclose her real identity in order to proceed with the litigation.  Because K. Nakashima has failed to show that Doe's interest in protecting her identity is outweighed by the public's interest in the litigation, Doe may proceed pseudonymously.   K. Nakashima's motion to dismiss on Counts II, VIII, and XI will be denied as moot because Doe has represented she will dismiss these claims.  As to the remaining claim of tortious interference, the Court will deny K. Nakashima's motion to dismiss because Doe has plausibly alleged K. Nakashima tortiously interfered with her employment contract.

## BACKGROUND

### I.    FACTUAL BACKGROUND

Doe began working for Innovate in May 2011 and was one of three people working in the Innovate office.  (Compl. at ¶ 15, Aug. 2, 2021, Docket No 1.)[1]  M. Nakashima is the principal manager and owner of Innovate.  (*Id.* at ¶ 9.)  K. Nakashima is married to M. Nakashima.  (Decl. of Kyle Hahn, Ex. A, Aug. 31, 2021, Docket No. 22-1.)[2]  Doe alleges that, beginning in 2014, M. Nakashima took a special interest in her, ultimately subjecting her to sexual misconduct in the workplace including sexually explicit language, sexual

---

[1] The Complaint begins on page 6 of the Notice of Removal.  (Defs.' Notice of Removal, Aug. 2, 2021, Docket No. 1.)

[2] The Court can consider the marriage certificate as it is necessarily embraced by the Complaint.  *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

advances, and unwanted touching. (*Id.* at ¶¶ 14, 18.) Doe states that she asked M. Nakashima to stop these actions but that he refused. (*Id.* at ¶¶19–20.)

At some point, though it is unclear when, Doe's spouse and K. Nakashima discovered that there was some sort of sexual relationship transpiring between Doe and M. Nakashima. Doe, M. Nakashima, and K. Nakashima participated in a phone call regarding these issues and focused their discussion on Doe's continued employment at Innovate. (Hahn Decl., Ex. B ("Phone Call Recording"), Aug. 31, 2021, Docket No. 22-2.)[3] On the call, M. Nakashima stated that the parties had initially discussed buying out Doe's contract with Innovate. (Phone Call Recording at 3:45–4:18.) K. Nakashima told Doe that "Mike and I want that," but Doe stated she did not want her contract bought out. (*Id.* at 4:23–4:25.) As such, the parties began discussing other alternatives. (*Id.*) M. Nakashima made it clear that he did not want to fire or even "slow fire" Doe and that Doe had not done anything wrong as an employee which would warrant dismissal. (*Id.* at 9:50–10:45.)

The Nakashimas informed Doe that if she were to continue working at Innovate, they would need to set up "extreme boundaries," meaning she would need to work from home for the foreseeable future. (*Id.* at 12:00–19:15.) Throughout their discussion, Doe made it clear that she believed she needed to be in the office at least part-time in order to properly carry out her duties to her clients. (*See, e.g.*, *id* at 17:30–18:00.) Doe

---

[3] While the recording of the phone call was not submitted with the Complaint, it can properly be considered by the Court on the motion to dismiss as it is necessarily embraced by the Complaint. *Ashanti*, 666 F.3d at 1151. The Complaint mentions the phone call and the recording of it and discusses what transpired during the call. (Compl. at 1, ¶¶ 28–42, 107.)

suggested working two days a week from the office and on those days M. Nakashima could work remotely. (*Id.* at 12:14–12:18.) The Nakashimas were against this proposal with K. Nakashima explaining that "it's our company, he's [M. Nakashima] not going to choose to work from home two days a week." (*Id*.)

During the call, K. Nakashima made several statements to Doe. K. Nakashima stated that Doe's life should be turned upside down, that Doe should have thought about how her job would be impacted based on this relationship and how this relationship would affect Doe's children. (*Id.* at 14:45–15:24.) K. Nakashima also pointed out that Doe chose to do what she did, and that Doe should have to be the one to start over with her career. (*Id.* at 22:00–22:20.) Doe replied that M. Nakashima also chose to do what he did. (*Id*.)

While no solution was reached on the part of the phone call recording submitted to the Court, ultimately, Doe was not allowed to come into the office. (Compl. at ¶ 54.) Doe alleges that her inability to come into the office impacted her business. (*Id.* at ¶¶ 54, 107–08.) Eventually, Doe resigned from her position at Innovate on the basis of constructive termination. (*Id.* at ¶ 55.)

## II.   PROCEDURAL HISTORY

Doe commenced this lawsuit in state court against Defendants asserting claims of sexual battery, violations of Title VII, negligence, negligent hiring, negligent retention, negligent supervision, vicarious liability, assault, battery, tortious interference,

4

retaliation, and wrongful termination.  (Compl.; Defs.' Notice of Removal, Aug. 2, 2021, Docket No. 1.)  Defendants removed the case to federal court and Innovate and M. Nakashima jointly answered the Complaint.  (Defs.' Notice of Removal; Joint Ans., Aug. 3, 2021, Docket No. 8.)  K. Nakashima filed a motion to dismiss.  (Mot. Dismiss, Aug. 9, 2021, Docket No. 9.)[4]

## DISCUSSION

### I.   STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor.  *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  Although the Court accepts the complaint's factual

---

[4] Both parties submitted exhibits and declarations with their briefing on the motion to dismiss that cannot properly be considered at this stage of litigation.   On a motion to dismiss, the Court is limited to the facts alleged in the Complaint and any documents necessarily embraced by the Complaint.  *Ashanti*, 666 F.3d at 1151.  While the documents submitted are relevant to the case, if the Court were to consider them, that would convert this motion into a motion for summary judgment.  As discovery has not yet begun, it is premature for the Court to convert the motion.  *Hovind v. Bristol Place Corp.*, 2008 WL 4717476, at *5 (D. Minn. Oct. 24, 2008).

allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.   ANALYSIS

### A.  Doe's Use of a Pseudonym

Plaintiff has decided to pursue this litigation under a pseudonym, Jane Doe, in order to protect her identity. K. Nakashima argues that Doe should be required to disclose her real name because Rule 10(a) requires that a complaint "must name all the parties." [5] Fed. R. Civ. P. Rule 10(a). "There is a First Amendment interest in public proceedings, and identifying the parties to an action is an important part of making it truly public." *Luckett v. Beaudet*, 21 F. Supp. 2d 1029, 1029 (D. Minn. 1998). Though neither the Supreme Court nor the Eighth Circuit have directly addressed pseudonymous

---

[5] K. Nakashima also asserts that Doe has not followed the Court's preferred practice of filing a motion to proceed pseudonymously and therefore she should be required to disclose. *Doe v. Mower Cnty Sheriff Off.*, 2019 WL 3821892, at *1 (D. Minn. July 16, 2019) (discussing the Court's preferred practice). While it is true that the Court would have preferred Doe to affirmatively file a motion, the Court will use this opportunity to review Doe's use of a pseudonym and decide whether her use is appropriate. This conclusion does not alter the fact that the Court does prefer a plaintiff to file a motion to proceed and the Court encourages parties to continue to do so in future ligation.

litigation, both courts have allowed parties to use pseudonyms.  *See, e.g.*, *Doe v. Sauer*, 186 F.3d 903, 904 n.2 (8th Cir. 1999).

There is a strong presumption against allowing parties to use a pseudonym unless one of a small number of judicially created exceptions to this presumption applies. *Beaudet*, 21 F. Supp. 2d at 1029.  A plaintiff may proceed under a pseudonym if (1) they are challenging a governmental activity; (2) prosecution of the suit would compel plaintiff to disclose information of the utmost intimacy; or (3) plaintiff would be compelled to admit their intention to engage in illegal conduct and risk prosecution.  *Id.* (citing *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981)).

The Court can look to a variety of factors such as: (1) whether the litigation involves matters that are highly sensitive and of a personal matter; (2) whether identification presents other harms and the likely severity of those harms, including whether the injury being litigated against would be incurred as a result of disclosure; (3) whether the defendant is prejudiced; (4) whether the plaintiff's identity has thus far been kept confidential; (5) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose their identity; and (6) whether there are alternative mechanisms to protecting the confidentiality of plaintiff.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008).

This case involves matters that are highly sensitive and of a personal nature.  The case involves allegations of years of sexual abuse and sexual harassment.   Whether

7

consensual or not, the Complaint describes incredibly private sexual acts, and it is certain

that exploration of these intimate matters will be central to the resolution of this case.

This is in line with *Doe v. University of St. Thomas* where the Court held that a case

involving private sexual acts between two college students was highly sensitive and of the

utmost intimacy, regardless of the consensual nature of the acts, and allowed the plaintiff

to proceed under a pseudonym.  2016 WL 9307609, at *2 (D. Minn. May 25, 2016).

   *Doe v. University of St. Thomas* is instructive on the second factor as well.  In *Doe*

*v. University of St. Thomas*, the Court held that the injury litigated against would occur

upon disclosure of plaintiff's identity because plaintiff alleged that defendant's conduct

would cause damage to his reputation and future prospects.  *Id.*  The Court held that even

if the plaintiff were successful on his claims and his name was vindicated, this would not

necessarily fix the damage to his reputation caused by his identity being associated with

the case.  *Id.*  So too here.  Doe argues that she has suffered a loss of reputation as a result

of Defendants' actions.  (Compl. ¶ 70.)  Disclosure of Doe's identity would result in further

loss of reputation—simply having her name associated with this case could tarnish her

professional reputation.  It would also potentially reveal these highly sensitive issues to

her family and children, which could cause additional harm such as emotional distress,

which is alleged in the Complaint.

   There is not a sufficiently strong countervailing interest in disclosing Doe's true

name.  K. Nakashima and the other Defendants would not be prejudiced by allowing Doe

to use a pseudonym as they already know her real identity and there would be no burden on discovery.  Courts frequently require that identities and information be protected from public record—requiring the same here would not be exceedingly burdensome on Defendants.  Lastly, K. Nakashima has not pointed to any public interest that would be furthered by requiring Doe to disclose her identity and the Court cannot conceive of any particular public interest either.

K. Nakashima argues that Doe should disclose her name because sexual harassment cases are routinely filed in federal district court under the plaintiffs' actual names.  (K. Nakashima Mot. Dismiss, at 7 (citing cases).)  What K. Nakashima glosses over is that not one of the plaintiffs in the litany of cases cited by K. Nakashima requested to use a pseudonym or filed their lawsuit under one.

K. Nakashima, citing *Doe v. Zinke*, goes on to argue that this Court has previously rejected the use of pseudonyms in employment discrimination cases and should not break from that practice here.  But *Doe v. Zinke* is inapposite here as that case did not involve any claims of sexual discrimination in the workplace.  2018 WL 1189341 (D. Minn. 2018).  Lastly, K. Nakashima's reliance on *Doe v. Weinstein* is equally unpersuasive as that case is not binding on this Court, and the Court cannot say it would have required the plaintiff in that case to have disclosed their true identity.

Because Doe has shown that her interest in protecting her identity outweighs the public interest in this case, she may continue in this litigation under a pseudonym.

### B.  Counts II, VIII, and XI

In her Complaint, Doe filed a total of four claims against K. Nakashima: a violation of Title VII, battery, wrongful termination, and tortious interference.  Doe now asserts that she will dismiss three of the four claims against K. Nakashima.  (Pl's Memo. Opp. Mot. Dismiss, at 1, Aug. 31, 2021, Docket No. 21.)  As such, the Court will deny K. Nakashima's motion to dismiss Counts II, VIII, and XI as moot.

### C.  Count IX – Tortious Interference

Since Doe is voluntarily dismissing three of the four claims brought against K. Nakashima, that leaves only the claim of tortious interference for the Court to consider on the motion to dismiss.  As an initial matter, the Court must first determine whether it will exercise supplemental jurisdiction over the tortious interference claim as it is a state law claim and the claim providing the Court with original jurisdiction, the Title VII claim, has been dismissed.

"[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in this action within such original jurisdiction that they form part of the same case or controversy under Article III[.]"  28 U.S.C. § 1376.  The Court has discretion in deciding whether to exercise supplemental jurisdiction. *Quinn v. Ocwen Fed. Bank FSB*, 470 F.3d 1240, 1249 (8th Cir. 2006.)  In exercising discretion, courts can look to a number of factors such as judicial efficiency, convenience, and fairness to litigators. *Condor Corp. v. City of St. Paul*, 912 F.2d 215, 221 (8th Cir. 1990).  The claim of tortious

interference arises from a similar set of facts relevant to the claims against other Defendants. It would be most efficient and convenient to keep the case together, and it would be unfair to Doe to have to refile her case in state court and prosecute it separately from the one here. On the whole, the factors weigh in favor of exercising supplemental jurisdiction, and, therefore, the Court will exercise jurisdiction over the tortious interference claim.

The Court must next decide whether to grant K. Nakashima's motion to dismiss the tortious interference cause of action for failure to state a claim under Rule 12(b)(6). To properly plead a tortious interference claim, Minnesota law requires the plaintiff to sufficiently plead the following five elements: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages. *Furlev Sales and Assocs. v. N. Am. Auto. Warehouse, Inc.*, 325 N.W.2d 20, 25 (Minn. 1982). Minnesota law recognizes a claim for tortious interference of an at-will employment agreement. *Nordling v. N. States Power Co.*, 478 N.W.2d 498, 505 (Minn. 1991). A third-party meddler can be held liable if they wrongfully interfere with the contractual relations of others. *Id.*

K. Nakashima agrees that there was an employment contract between Doe and Innovate and concedes that she was aware of that contract's existence. But K. Nakashima takes issue with the Complaint's assertion that she intentionally procured a breach of that contract. Doe's tortious interference claim stems from the alleged breach of a material

11

term of her employment contract that she would work from the office because working in the office provided her with required resources and a space to meet and consult with clients.  Doe claims that by restricting her to remote work this burdened her ability to generate income.  Doe has alleged that K. Nakashima intentionally procured the breach of this material term because she insisted her husband force Doe to work from home. Further, Doe argues that another material term of her contract was that her employment would be contingent upon her compliance with objective standards, not K. Nakashima's approval.   Doe asserts K. Nakashima intentionally procured a breach of Doe's employment contract by altering these standards by which Doe would be reviewed by. Doe states that she was damaged by both alleged breaches and has represented that she intends to present evidence of said damage to the Court. [6]

In support of these allegations, Doe points to the phone call between Doe, K. Nakashima, and M. Nakashima where K. Nakashima made it clear that Doe should have to work from home, that her life should be turned upside down, and that she is the one who should have to start over in her career.  Doe claims that K. Nakashima's participation

---

[6] K. Nakashima's assertion that an intentional procurement of a breach requires the plaintiff to actually lose a contract overstates the law.  K. Nakashima cites to *Sip-Top, Inc. v. Ecko Group Inc.* for this assertion because there, the Eighth Circuit held that summary judgment was appropriate where "evidence does not support an inference that [defendant's] actions caused [plaintiff] to lose a contract."  86 F.3d 827, 832 (8th Cir. 1996).  But the Eighth Circuit was not reciting the required elements of a tortious interference claim.  Rather, the mention of losing a contract was contextual, referring to the breach at issue in that specific case.  Furthermore, the Eighth Circuit was reviewing the claims on summary judgment, rather than on a motion to dismiss.

on the call supports her assertion that K. Nakashima was the driving force behind materially altering Doe's employment contract.

K. Nakashima's argument that Doe's revenues and compensation were higher than ever during this period, and therefore her claims of damages are unfounded, is a factual consideration for the Court to weigh on summary judgment. The Court cannot properly weigh these facts on a motion to dismiss because the Court is limited to the Complaint and all documents necessarily embraced by the Complaint only. Taking all the allegations as true in this limited record, Doe has plausibly alleged that K. Nakashima intentionally procured a breach of her contract and that she was damaged by it. Thus, Doe's tortious interference claim survives the motion to dismiss and the Court will deny K. Nakashima's motion on this claim.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff may proceed in this litigation pseudonymously;

2. Kelly Nakashima's Motion to Dismiss [Docket No. 9] on Counts II, VIII, and XI, is **DENIED AS MOOT**; and

3. Kelly Nakashima's Motion to Dismiss [Docket No. 9] on Count IX is **DENIED.**

Dated:  March 7, 2022
at Minneapolis, Minnesota

s/John R. Tunheim
JOHN R. TUNHEIM
Chief Judge
United States District Court